UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTGAGE LENDER SERVICES, INC,<br><br>  Plaintiff,<br><br>  v.<br><br>2408 I STREET and 2407 J STREET, SACRAMENTO, CA  95816, et al.,<br><br>  Defendants. | No.  2:19-cv-02568-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

    The United States is a potential claimant to some $1,403,648.33 in funds interpleaded by Plaintiff Mortgage Lender Services, Inc., ("Plaintiff") with the Sacramento County Superior Court on November 18, 2019.  The government removed the state action to this Court on December 19, 2019, invoking federal question jurisdiction on grounds that the United States is a party.  The government now moves for summary judgment under Federal Rule of Civil Procedure 56,[1] arguing that it is entitled as a matter of law to recoup unpaid federal tax liabilities of a potential claimant to the funds, Roger

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

Duke. As set forth below, that Motion, as well as a cross-motion in opposition filed by yet another claimant, are DENIED.[2]  ECF Nos. 8 and 13.

## BACKGROUND

In September 2012, the O Street Partners, LLC, ("OSP") executed a promissory note secured by a Deed of Trust in order to purchase real property located at 2408 I Street and 2407 J Street ("the properties"). The beneficiary of the Deed of Trust, the 1988 Orredre Revocable Trust UDT dated April 26, 1988 ("the Trust) had loaned OSP some $4.2 million to purchase the properties. Members of the Orredre family were also the majority stakeholders in OSP. Roger Duke along with Paula and Samuel Downing originally had minority interests.

Following what appears to have been a dispute over control over OSP, the Trust initiated foreclosure proceedings against OSP after, at least according to Duke, it improperly refused to refinance the loan and drained OSP of the cash necessary to keep the loan current. The properties were subsequently sold for some $6.2 million and the Trust received some $4,652,466.24 to satisfy the promissory note. That left surplus cash from the sale in the sum of $1,407,533.76, which after payment of trustee's fees, expenses and a filing fee yielded a net surplus of $1,403,648.33. Because both Roger Duke and OSP itself claimed entitlement to those proceeds, and since there were other potential claimants to the funds as well, Plaintiff decided to interplead the funds by filing a Petition for Distribution Regarding Unresolved Claims with the state court on November 18, 2019. It deposited the surplus proceeds that same day.

By Order and Notice of Hearing issued December 15, 2019 (Ex. B to Pl.'s Notice of Removal, ECF No. 1-2, p. 133-17), the state court granted Plaintiff's request to be

---

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

discharged from the proceedings upon interpleading the funds.  At the same time, the state court set a deadline of January 30, 2020, for any potential claimant to submit a claim against the proceeds prior to a hearing to be held on February 28, 2020 as to disposition of the funds.

On December 19, 2019, just four days after issuance of the state court order, the United States removed the matter to federal court.  There accordingly had been no disposition in state court as to the competing claimants prior to removal.  The United States has nonetheless moved for summary judgment on grounds that it is entitled to recover Roger Duke's unpaid federal tax liability from the proceeds even though Duke's entitlement to those proceeds vis-à-vis any other claimants has yet to be established.  OSP, not surprisingly, opposes the government's motion as premature at this juncture yet also claims that it should be entitled to the proceeds as a matter of law to the exclusion of other claimants.

## ANALYSIS

The Court begins by considering the procedural status of this matter.  Plaintiff, as a stakeholder holding funds or property to which conflicting claims may be made, is entitled to protect itself from multiple liability, by requiring potential claimants to litigate between themselves who is entitled to the funds or property.  In federal court, that is accomplished by commencing an action in interpleader.  See, e.g., Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1265 (9th Cir. 1992).  An interpleader action entails a two-stage process.  "'First, the court determines the propriety of interpleading the adverse claimants and relieving the stakeholder from liability.  The second stage involves an adjudication of the adverse claims of the defendant claimants.'" Metro. Life Ins. Co. v. Billini, 2007 WL 4209405 at *2 (E.D. Cal. 2007) (quoting First Interstate Bank of Or. v. U.S., 891 F. Supp. 543, 546 (D. Or. 1995)).

Here, Plaintiff began the two-step process by filing a Petition in state court under

California Civil Code § 2924j(c) on November 18, 2019.  ECF No. 1-1, p.3.  That statute permits a Trustee, following a Trustee's Sale, to deposit any funds remaining after the obligations secured by the Deed of Trust have been satisfied, should entitlement to those funds be disputed.   As indicated above, Plaintiff deposited the sum of $1,403,648.33 with the state court concurrently with the filing of its Petition.  That deposit, which corresponds with the first step of federal interpleader practice, permitted the state court to discharge Plaintiff of any further responsibility for disbursement of the sale proceeds, and it did so by its order of December 13, 2019.  ECF No. 1-2, p. 133.  Then, under California Civil Code § 2924(d), the state court was required to hold a hearing after notice to potential claimants, after which the deposited funds would be distributed to any and all claimants entitled thereto.  The state court's order of December 13, 2019 did just that by setting a hearing for February 28, 2020.  That corresponds to the second stage of federal interpleader practice.

    Because the United States removed the case to this Court on December 19, 2019, the second stage in the interpleader process has not yet been completed.[3]  Even though any entitlement to the disputed funds thus remains unresolved, the United States has moved for summary judgment, claiming that because Roger Duke owns 12.5 percent of OSP, the government is accordingly entitled to satisfy its $189,883.40 claim for Mr. Duke's personal unpaid federal tax liability out of his share of the remaining proceeds.[4]

    The government's motion is premature, at best.  OSP, for its part, claims that it continues to operate as a legal entity and has numerous financial obligations, including significant outstanding bills from vendors and debt owed to commercial banks which

---

[3] Following removal, this Court issued, on April 21, 2020, its own Order (ECF No. 17) transferring the deposited surplus proceeds here and discharging Plaintiff from any further liability for disbursing those funds, such that Plaintiff's status is only that of a nominal party excused from any further participation in the proceedings.  That confirms that the first stage of the interpleader process has been completed, leaving only the second phase adjudicating the competing claims to be accomplished.

[4] Assuming a 12.5 percent share of the surplus funds held in interpleader, Mr. Duke would hypothetically be entitled to some $175,941.72 of those funds.

4

exceeds $1,800,000, a sum in excess of the disputed sales proceeds now held in interpleader. Importantly, as OSP points out, its own Operating Agreement, at Article XII, Paragraph 12.1, provides as follows:

> Distributions of Available Cash of the Company shall be made to the Members only after all operating expenses have been paid in full and adequate reserves have been established, all as determined in the discretion of the Manager . . . .

OSP Operating Agreement, Ex. 1 to OSP's Opp., ECF No. 13.

That provision is consistent with the California Corporations Code, which provides at § 17704.05(a) that "[a] limited liability company shall not make a distribution if after the distribution. . . the limited liability company would not be able to pay its debts as they become due… " Accordingly, OSP maintains that, in light of its other claimed debts, excess funds in interpleader cannot be deemed a distribution so as to satisfy Mr. Duke's own unpaid personal tax liability.[5] Therefore, OSP maintains that the government's Motion for Summary Judgment must fail.

The Court agrees. Until the issue of who is entitled to the deposited proceeds has been resolved through the second stage of the interpleader process, which has not yet occurred, whether or not the government can satisfy Mr. Duke's tax obligations out of his potential share cannot possibly be determined. The same logic applies to OSP's own cross-motion for summary judgment, made in the course of opposing the United States' Motion. OSP's Opp. and Cross Motion, ECF No. 13. The Court cannot rule out the possibility that some part of the interpleaded funds may inure to Mr. Duke's benefits so as to be subject to governmental seizure at this juncture, again since who is entitled to the proceeds has simply not been established.

Tellingly, the government's own reply papers appear to concede the infirmities of

---

[5] To further complicate matters, the parties also dispute just who is entitled to manage OSP at this juncture. While Roger Duke agreed to relinquish control in that regard, he claims he did so based on an agreement with OSP that was breached and is accordingly void. The Orradre Trust has also submitted an Opposition to the United States' Motion maintaining that John Orradre, and not Roger Duke, is the current manager of OSP. Decl. of John Orradre, ECF No. 15-2, ¶ 2. Like the OSP Opposition itself, however, the Orradre papers confirm OSP's allegedly outstanding indebtedness of some $1.8 million, as well as the fact that no distributions have been made to OSP members since the foreclosure sale. Id. at ¶ 3.

its Motion for Summary Judgment at this stage of the proceedings. According to the Reply, "the United States maintains that this court should order the release of 12.5 % of the interpleaded funds to the United States absent further proof that O Street Partners has legitimate debts that would preclude any such distribution." Reply, ECF No. 16, 2:10-12. (emphasis added). Just as significantly, the Reply continues:

> In order to ensure a lawful and equitable distribution of the interpleaded funds, the United States believes that the proper course of action is to order any claimants on O Street Partners to file a claim in this matter that demonstrates to this Court that the alleged debts referenced in the Oppositions are legitimate debts that must be paid before distributions. Absent this showing, the United States' Motion for Summary Judgment must be granted.
>
> The United States believes that requiring all claims against the funds, including alleged debts to be filed in this action, the Court will ensure a just distribution of those funds, and avoid the risk of fraud.

Id. at 5:2-6.

In the Court's view, this amounts to a concession that summary judgment is an unviable option unless and until competing claims to the interpleaded funds have been resolved. Consequently, any request for summary judgment at this point is premature.

## CONCLUSION

Based on the foregoing, the United States' Motion for Summary Judgment (ECF No. 8) is DENIED, as is OSP's Cross Motion for Summary Judgment incorporated within its Opposition to the government's Motion at ECF No. 13. By separate Minute Order, the Court will schedule a Status Conference at which time the further disposition of this matter will be addressed.

IT IS SO ORDERED.

Dated: May 29, 2020

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE